UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

LAURA CONSTANTINE          :
                           :
    v.                     :   C.A. No. 14-181M
                           :
CAROLYN COLVIN             :
Commissioner of the Social Security :
Administration             :

**REPORT AND RECOMMENDATION**

Lincoln D. Almond, United States Magistrate Judge

This matter is before the Court for judicial review of a final decision of the Commissioner of the Social Security Administration ("Commissioner") denying Supplemental Security Income ("SSI") benefits under the Social Security Act (the "Act"), 42 U.S.C. § 405(g). Plaintiff filed her Complaint on April 9, 2014 seeking to reverse the decision of the Commissioner. On September 30, 2014, Plaintiff filed a Motion to Remand. (Document No. 13).[1] On October 31, 2014, the Commissioner filed a Motion for an Order Affirming the Decision of the Commissioner. (Document No. 14).

This matter has been referred to me for preliminary review, findings and recommended disposition. 28 U.S.C. § 636(b)(1)(B); LR Cv 72. Based upon my review of the record, the parties' submissions and independent research, I find that there is substantial evidence in this record to support the Commissioner's decision and findings that Plaintiff is not disabled within the meaning

---

[1] Plaintiff's pro se Motion consists of one sentence indicating that she "would like to file a motion to remand so that my case may be given the opportunity to be reheard." (Document No. 13). Plaintiff's Motion is not accompanied by a supporting memorandum as required by the Scheduling Order (Document No. 10) and this Court's Local Rules Cv 7(a), (d)(4).

of the Act. Consequently, I recommend that the Commissioner's Motion for Order Affirming the Decision of the Commissioner (Document No. 14) be GRANTED and that Plaintiff's Motion to Remand (Document No. 13) be DENIED.

## I. PROCEDURAL HISTORY

Plaintiff filed an application for SSI on June 24, 2011 alleging disability since January 2, 2011 (Tr. 182-191) due to a back injury. (Tr. 111). The application was denied initially on September 7, 2011 (Tr. 111-119) and on reconsideration on January 24, 2012. (Tr. 120-130). On December 4, 2012, Plaintiff requested an Administrative hearing. (Tr. 16). On September 10, 2012, a hearing was held before Administrative Law Judge Matthew Kuperstein (the "ALJ") at which time Plaintiff, represented by counsel,[2] and a vocational expert ("VE") appeared and testified. (Tr. 35-84). The ALJ issued an unfavorable decision to Plaintiff on November 16, 2012. (Tr. 18-30). The Appeals Council denied Plaintiff's Request for Review on February 11, 2014, therefore the ALJ's decision became final. (Tr. 1-4). A timely appeal was then filed with this Court.

## II. THE PARTIES' POSITIONS

Plaintiff summarily seeks remand but has not identified or articulated any alleged error in the ALJ's decision or other support for a remand in this case.

The Commissioner objects to Plaintiff's request for remand and submitted a detailed memorandum asserting that the ALJ's findings are supported by substantial evidence and must be affirmed by this Court.

---

[2] Plaintiff's counsel, Myler Disability, withdrew its representation of Plaintiff and waived any rights to fees on December 10, 2012 after receipt of the unfavorable decision from the ALJ. (Tr. 17). Thereafter, Plaintiff has proceeded pro se.

## III. THE STANDARD OF REVIEW

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla – i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. Ortiz v. Sec'y of Health and Human Servs., 955 F.2d 765, 769 (1st Cir. 1991) (per curiam); Rodriguez v. Sec'y of Health and Human Servs., 647 F.2d 218, 222 (1st Cir. 1981).

Where the Commissioner's decision is supported by substantial evidence, the court must affirm, even if the court would have reached a contrary result as finder of fact. Rodriguez Pagan v. Sec'y of Health and Human Servs., 819 F.2d 1, 3 (1st Cir. 1987); Barnes v. Sullivan, 932 F.2d 1356, 1358 (11th Cir. 1991). The court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. Frustaglia v. Sec'y of Health and Human Servs., 829 F.2d 192, 195 (1st Cir. 1987); Parker v. Bowen, 793 F.2d 1177 (11th Cir. 1986) (court also must consider evidence detracting from evidence on which Commissioner relied).

The court must reverse the ALJ's decision on plenary review, however, if the ALJ applies incorrect law, or if the ALJ fails to provide the court with sufficient reasoning to determine that he or she properly applied the law. Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999) (per curiam); accord Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991). Remand is unnecessary where all of the essential evidence was before the Appeals Council when it denied review, and the evidence establishes without any doubt that the claimant was disabled. Seavey v. Barnhart, 276 F.3d 1, 11 (1st Cir. 2001) citing, Mowery v. Heckler, 771 F.2d 966, 973 (6th Cir. 1985).

The court may remand a case to the Commissioner for a rehearing under sentence four of 42 U.S.C. § 405(g); under sentence six of 42 U.S.C. § 405(g); or under both sentences. Seavey, 276 F.3d at 8. To remand under sentence four, the court must either find that the Commissioner's decision is not supported by substantial evidence, or that the Commissioner incorrectly applied the law relevant to the disability claim. Id.; accord Brenem v. Harris, 621 F.2d 688, 690 (5th Cir. 1980) (remand appropriate where record was insufficient to affirm, but also was insufficient for district court to find claimant disabled).

Where the court cannot discern the basis for the Commissioner's decision, a sentence-four remand may be appropriate to allow her to explain the basis for her decision. Freeman v. Barnhart, 274 F.3d 606, 609-610 (1st Cir. 2001). On remand under sentence four, the ALJ should review the case on a complete record, including any new material evidence. Diorio v. Heckler, 721 F.2d 726, 729 (11th Cir. 1983) (necessary for ALJ on remand to consider psychiatric report tendered to Appeals Council). After a sentence four remand, the court enters a final and appealable judgment immediately, and thus loses jurisdiction. Freeman, 274 F.3d at 610.

In contrast, sentence six of 42 U.S.C. § 405(g) provides:

> The court...may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding;

42 U.S.C. § 405(g). To remand under sentence six, the claimant must establish: (1) that there is new, non-cumulative evidence; (2) that the evidence is material, relevant and probative so that there is a reasonable possibility that it would change the administrative result; and (3) there is good cause

for failure to submit the evidence at the administrative level. See Jackson v. Chater, 99 F.3d 1086, 1090-1092 (11th Cir. 1996).

A sentence six remand may be warranted, even in the absence of an error by the Commissioner, if new, material evidence becomes available to the claimant. Id. With a sentence six remand, the parties must return to the court after remand to file modified findings of fact. Id. The court retains jurisdiction pending remand, and does not enter a final judgment until after the completion of remand proceedings. Id.

**IV. THE LAW**

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 416(i), 423(d)(1); 20 C.F.R. § 404.1505. The impairment must be severe, making the claimant unable to do her previous work, or any other substantial gainful activity which exists in the national economy. 42 U.S.C. § 423(d)(2); 20 C.F.R. §§ 404.1505-404.1511.

**A. Treating Physicians**

Substantial weight should be given to the opinion, diagnosis and medical evidence of a treating physician unless there is good cause to do otherwise. See Rohrberg v. Apfel, 26 F. Supp. 2d 303, 311 (D. Mass. 1998); 20 C.F.R. § 404.1527(d). If a treating physician's opinion on the nature and severity of a claimant's impairments, is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record, the ALJ must give it controlling weight. 20 C.F.R. § 404.1527(d)(2). The ALJ may discount a treating physician's opinion or report regarding an inability to work if it is unsupported

by objective medical evidence or is wholly conclusory. See Keating v. Sec'y of Health and Human Servs., 848 F.2d 271, 275-276 (1st Cir. 1988).

Where a treating physician has merely made conclusory statements, the ALJ may afford them such weight as is supported by clinical or laboratory findings and other consistent evidence of a claimant's impairments. See Wheeler v. Heckler, 784 F.2d 1073, 1075 (11th Cir. 1986). When a treating physician's opinion does not warrant controlling weight, the ALJ must nevertheless weigh the medical opinion based on the (1) length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship; (3) the medical evidence supporting the opinion; (4) consistency with the record as a whole; (5) specialization in the medical conditions at issue; and (6) other factors which tend to support or contradict the opinion. 20 C.F.R § 404.1527(c). However, a treating physician's opinion is generally entitled to more weight than a consulting physician's opinion. See 20 C.F.R. § 404.1527(c)(2).

The ALJ is required to review all of the medical findings and other evidence that support a medical source's statement that a claimant is disabled. However, the ALJ is responsible for making the ultimate determination about whether a claimant meets the statutory definition of disability. 20 C.F.R. § 404.1527(e). The ALJ is not required to give any special significance to the status of a physician as treating or non-treating in weighing an opinion on whether the claimant meets a listed impairment, a claimant's residual functional capacity (see 20 C.F.R. §§ 404.1545 and 404.1546), or the application of vocational factors because that ultimate determination is the province of the Commissioner. 20 C.F.R. § 404.1527(e). See also Dudley v. Sec'y of Health and Human Servs., 816 F.2d 792, 794 (1st Cir. 1987).

**B.     Developing the Record**

The ALJ has a duty to fully and fairly develop the record. Heggarty v. Sullivan, 947 F.2d 990, 997 (1st Cir. 1991). The Commissioner also has a duty to notify a claimant of the statutory right to retained counsel at the social security hearing, and to solicit a knowing and voluntary waiver of that right if counsel is not retained. See 42 U.S.C. § 406; Evangelista v. Sec'y of Health and Human Servs., 826 F.2d 136, 142 (1st Cir. 1987). The obligation to fully and fairly develop the record exists if a claimant has waived the right to retained counsel, and even if the claimant is represented by counsel. Id. However, where an unrepresented claimant has not waived the right to retained counsel, the ALJ's obligation to develop a full and fair record rises to a special duty. See Heggarty, 947 F.2d at 997, citing Currier v. Sec'y of Health Educ. and Welfare, 612 F.2d 594, 598 (1st Cir. 1980).

**C.     Medical Tests and Examinations**

The ALJ is required to order additional medical tests and exams only when a claimant's medical sources do not give sufficient medical evidence about an impairment to determine whether the claimant is disabled. 20 C.F.R. § 416.917; see also Conley v. Bowen, 781 F.2d 143, 146 (8th Cir. 1986). In fulfilling his duty to conduct a full and fair inquiry, the ALJ is not required to order a consultative examination unless the record establishes that such an examination is necessary to enable the ALJ to render an informed decision. Carrillo Marin v. Sec'y of Health and Human Servs., 758 F.2d 14, 17 (1st Cir. 1985).

**D.     The Five-step Evaluation**

The ALJ must follow five steps in evaluating a claim of disability. See 20 C.F.R. §§ 404.1520, 416.920. First, if a claimant is working at a substantial gainful activity, she is not

disabled. 20 C.F.R. § 404.1520(b). Second, if a claimant does not have any impairment or combination of impairments which significantly limit her physical or mental ability to do basic work activities, then she does not have a severe impairment and is not disabled. 20 C.F.R. § 404.1520(c). Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, she is disabled. 20 C.F.R. § 404.1520(d). Fourth, if a claimant's impairments do not prevent her from doing past relevant work, she is not disabled. 20 C.F.R. § 404.1520(e). Fifth, if a claimant's impairments (considering her residual functional capacity, age, education, and past work) prevent her from doing other work that exists in the national economy, then she is disabled. 20 C.F.R. § 404.1520(f). Significantly, the claimant bears the burden of proof at steps one through four, but the Commissioner bears the burden at step five. Wells v. Barnhart, 267 F. Supp. 2d 138, 144 (D. Mass. 2003) (five-step process applies to both SSDI and SSI claims).

In determining whether a claimant's physical and mental impairments are sufficiently severe, the ALJ must consider the combined effect of all of the claimant's impairments, and must consider any medically severe combination of impairments throughout the disability determination process. 42 U.S.C. § 423(d)(2)(B). Accordingly, the ALJ must make specific and well-articulated findings as to the effect of a combination of impairments when determining whether an individual is disabled. Davis v. Shalala, 985 F.2d 528, 534 (11th Cir. 1993).

The claimant bears the ultimate burden of proving the existence of a disability as defined by the Social Security Act. Seavey, 276 F.3d at 5. The claimant must prove disability on or before the last day of her insured status for the purposes of disability benefits. Deblois v. Sec'y of Health and Human Servs., 686 F.2d 76 (1st Cir. 1982), 42 U.S.C. §§ 416(i)(3), 423(a), (c). If a claimant

becomes disabled after she has lost insured status, her claim for disability benefits must be denied despite her disability. Id.

**E.      Other Work**

Once the ALJ finds that a claimant cannot return to her prior work, the burden of proof shifts to the Commissioner to establish that the claimant could perform other work that exists in the national economy. Seavey, 276 F.3d at 5. In determining whether the Commissioner has met this burden, the ALJ must develop a full record regarding the vocational opportunities available to a claimant. Allen v. Sullivan, 880 F.2d 1200, 1201 (11th Cir. 1989). This burden may sometimes be met through exclusive reliance on the Medical-Vocational Guidelines (the "grids"). Seavey, 276 F.3d at 5. Exclusive reliance on the "grids" is appropriate where the claimant suffers primarily from an exertional impairment, without significant non-exertional factors. Id.; see also Heckler v. Campbell, 461 U.S. 458, 103 S. Ct. 1952, 76 L.Ed.2d 66 (1983) (exclusive reliance on the grids is appropriate in cases involving only exertional impairments, impairments which place limits on an individual's ability to meet job strength requirements).

Exclusive reliance is not appropriate when a claimant is unable to perform a full range of work at a given residual functional level or when a claimant has a non-exertional impairment that significantly limits basic work skills. Nguyen, 172 F.3d at 36. In almost all of such cases, the Commissioner's burden can be met only through the use of a vocational expert. Heggarty, 947 F.2d at 996. It is only when the claimant can clearly do unlimited types of work at a given residual functional level that it is unnecessary to call a vocational expert to establish whether the claimant can perform work which exists in the national economy. See Ferguson v. Schweiker, 641 F.2d 243, 248 (5th Cir. 1981). In any event, the ALJ must make a specific finding as to whether the non-

exertional limitations are severe enough to preclude a wide range of employment at the given work capacity level indicated by the exertional limitations.

### 1. Pain

"Pain can constitute a significant non-exertional impairment." Nguyen, 172 F.3d at 36. Congress has determined that a claimant will not be considered disabled unless he furnishes medical and other evidence (e.g., medical signs and laboratory findings) showing the existence of a medical impairment which could reasonably be expected to produce the pain or symptoms alleged. 42 U.S.C. § 423(d)(5)(A). The ALJ must consider all of a claimant's statements about his symptoms, including pain, and determine the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence. 20 C.F.R. § 404.1528. In determining whether the medical signs and laboratory findings show medical impairments which reasonably could be expected to produce the pain alleged, the ALJ must apply the First Circuit's six-part pain analysis and consider the following factors:

(1) The nature, location, onset, duration, frequency, radiation, and intensity of any pain;

(2) Precipitating and aggravating factors (e.g., movement, activity, environmental conditions);

(3) Type, dosage, effectiveness, and adverse side-effects of any pain medication;

(4) Treatment, other than medication, for relief of pain;

(5) Functional restrictions; and

(6) The claimant's daily activities.

Avery v. Sec'y of Health and Human Servs., 797 F.2d 19, 29 (1st Cir. 1986). An individual's statement as to pain is not, by itself, conclusive of disability. 42 U.S.C. § 423(d)(5)(A).

### 2. Credibility

Where an ALJ decides not to credit a claimant's testimony about pain, the ALJ must articulate specific and adequate reasons for doing so, or the record must be obvious as to the credibility finding. Rohrberg, 26 F. Supp. 2d at 309. A reviewing court will not disturb a clearly articulated credibility finding with substantial supporting evidence in the record. See Frustaglia, 829 F.2d at 195. The failure to articulate the reasons for discrediting subjective pain testimony requires that the testimony be accepted as true. See DaRosa v. Sec'y of Health and Human Servs., 803 F.2d 24 (1st Cir. 1986).

A lack of a sufficiently explicit credibility finding becomes a ground for remand when credibility is critical to the outcome of the case. See Smallwood v. Schweiker, 681 F.2d 1349, 1352 (11th Cir. 1982). If proof of disability is based on subjective evidence and a credibility determination is, therefore, critical to the decision, "the ALJ must either explicitly discredit such testimony or the implication must be so clear as to amount to a specific credibility finding." Foote v. Chater, 67 F.3d 1553, 1562 (11th Cir. 1995) (quoting Tieniber v. Heckler, 720 F.2d 1251, 1255 (11th Cir. 1983)).

### V. APPLICATION AND ANALYSIS

Plaintiff was forty-six years old on the date of the ALJ's decision. Plaintiff completed two years of post-secondary education and worked in the past as a home health aide, server/waitress, car salesperson and in customer service. (Tr. 51, 207 and 263).

On January 5, 2011, an MRI of Plaintiff's lumbar spine showed severe degenerative changes at L5-S1 with a disc bulge and spondylosis, a possible small herniation, and foraminal narrowing.

(Tr. 273). On January 18, 2011, Plaintiff complained to Dr. Kucharchik of low back pain and numbness in her left foot. (Tr. 324). Dr. Kucharchik did not report any objective examination findings and assessed lumbar disc disease with spinal stenosis. Id. On January 24, 2011, Plaintiff complained to Dr. Kucharchik of severe pain in her low back, left hip and left foot, as well as numbness in her pinky and ring fingers on the left. (Tr. 320). On examination, Dr. Kucharchik reported full strength in all extremities and diminished sensation in the left fingers. Id. Dr. Kucharchik assessed lumbar disc disease and spinal stenosis. Id.

On April 10, 2011, Plaintiff filled out a function report to support her SSI application. (Tr. 218-223). Plaintiff stated that during the day she straightened up, watched television, cooked, lay on a heating pad, and fed and let out her dog. (Tr. 220). She reported that a friend helped her sweep, mop, and mow and that she had no problems with her personal care. (Tr. 221). She also stated that she prepared her own meals daily and was able to do dishes and laundry. (Tr. 222-223). Plaintiff stated that she was able to drive and go out alone. (Tr. 223). She stated that she shopped in stores and by computer and was able to handle money. (Tr. 218). Plaintiff reported that she liked to watch television and tried to exercise in her parents' pool. Id.

On July 29, 2011, Dr. Doherty, a treating neurosurgeon, noted that Plaintiff had had surgeries on her cervical and lumbar spine in the past. (Tr. 365). He noted that Plaintiff had recently been experiencing increasing low back pain radiating into her left leg. Id. Dr. Doherty reported diminished sensation and strength on Plaintiff's left side and moderate to severe spasms. Id. On August 1, 2011, Dr. Doherty performed lumbar fusion surgery on Plaintiff. (Tr. 349). On August 16, 2011, physician's assistant Arthur Welch reported that Plaintiff was doing remarkably well after surgery. (Tr. 364). He reported that Plaintiff was ambulating well with a cane and showed a

negative straight leg raise, full strength in all areas of her legs and normal reflexes. Id. On August 29, 2011, Dr. Doherty estimated that Plaintiff could return to work on November 1, 2011 and did not indicate any work restrictions. (Tr. 363).

On September 6, 2011, physical therapist Sharon Adams reported that Plaintiff could move independently from sitting to standing without her hands with difficulty, transfer to and from bed or a chair without an assistive device with minimal difficulty, ambulate on even terrain without an assistive device with difficulty, and climb stairs without an assistive device with difficulty. (Tr. 378). Ms. Adams reported that Plaintiff was mildly limited in specific activities of daily living; specifically, that she needed to use a shower chair, could sit for fifteen to twenty minutes, stand less than five minutes, lift ten pounds and walk less than five minutes. Id.

On September 7, 2011, state agency consultant Dr. Bennett opined that Plaintiff's degenerative disc disease constituted a severe impairment that did not meet or equal Listing 1.04. (Tr. 115). Dr. Bennett opined that Plaintiff could occasionally lift and carry up to twenty pounds, frequently lift and carry up to ten pounds, sit for six hours in an eight-hour workday and stand or walk for six hours in an eight-hour workday. (Tr. 116). Dr. Bennett opined that Plaintiff could occasionally climb ladders, ropes, and scaffolds; stoop; crouch; and crawl; and was unlimited in climbing rams and stairs, balancing, and kneeling. Id.

On September 12, 2011, Ms. Adams, a physical therapist, reported that Plaintiff could transfer to and from bed, transfer to and from a chair, ambulate on even terrain without an assistive device, and climb five stairs without an assistive device. She noted that Plaintiff experienced no pain or limitation in her activities of daily living. (Tr. 385). Ms. Adams repeated this assessment on September 19, 2011 (Tr. 287) and September 21, 2011. (Tr. 389). On October 18, 2011, Mr.

Welch, a physician's assistant, reported that Plaintiff experienced some swelling in her low back and leg pain with activity. (Tr. 419). He noted that Plaintiff was doing physical therapy without difficulty, although she experienced spasms when she pushed herself too hard. Id. Mr. Welch reported that Plaintiff sat comfortably, could move from sitting to standing, showed moderate spasm with forward flexion, demonstrated full strength in all areas of both legs and showed a mildly positive straight leg raise on the right. Id. Mr. Welch stated that Plaintiff should slowly increase her activities and could return to light duty work in about two months. Id.

On December 1, 2011, Plaintiff filled out another function report. (Tr. 245-252). Plaintiff reported that during the day she straightened up, fed her dog, watched television and ran errands with her mother. (Tr. 245). Plaintiff stated that she provided cooking and transportation for her daughter. Id. She reported that it was sometimes painful to put on socks and shoes but that she otherwise had no trouble with personal care. (Tr. 247). Plaintiff stated that she prepared her own meals and that she swept, did laundry, dusted and cooked every day or every other day. (Tr. 248-249). She stated that she drove three times each day. (Tr. 249). Plaintiff reported that she shopped in stores and by computer, and that she only walked around her house or to the car. (Tr. 250-251). She stated that her ability to pay attention was not affected by her impairment and that she could follow instructions, deal with authority figures and handle stress. (Tr. 251).

On January 24, 2012, state agency consultant Dr. Bernstein opined that Plaintiff's degenerative disc disease constituted a severe impairment that did not meet or equal Listing 1.04. (Tr. 125). Dr. Bernstein opined that Plaintiff could occasionally lift up to twenty pounds, frequently lift up to ten pounds, sit for six hours in an eight-hour workday and stand or walk for six-hours in an eight-hour workday. (Tr. 126). He opined that Plaintiff could frequently climb stairs or ramps

and kneel; occasionally climb ladders, stoop, crouch, and crawl; and was unlimited in her ability to balance. (Tr. 127).

On June 1, 2012, Mr. Welch noted that Plaintiff reported increased pain in her cervical spine and left arm for the past week. (Tr. 447). He reported that Plaintiff showed a normal gait, normal range of motion in her neck, no weakness and normal muscle tone in her upper right extremity, and some weakness with normal muscle tone in her upper left extremity. (Tr. 448). On July 9, 2012, Dr. Doherty reported that Plaintiff demonstrated normal strength and somewhat diminished sensation on the left side, and preserved range of motion in her cervical and lumbar spine. (Tr. 425). He noted that Plaintiff's cervical MRI showed no substantial deterioration or stenosis. Id.

On September 6, 2012, Dr. Doherty opined that Plaintiff suffered from failed back syndrome and chronic back and neck pain, which constantly interfered with her attention and concentration. (Tr. 458). He stated that Plaintiff's medications caused dizziness and drowsiness. Id. He opined that Plaintiff could sit for fifteen minutes at one time and stand or walk for fifteen minutes at one time. Id. He opined that Plaintiff could sit, stand, or walk for zero hours during an eight-hour workday. Id. Dr. Doherty also opined that Plaintiff would need to shift positions every twenty to thirty minutes and then would need fifteen to twenty minutes before returning to work. Id. He further opined that Plaintiff could occasionally lift less than ten pounds. (Tr. 459). Dr. Doherty opined that Plaintiff had limitations in reaching, handling, and fingering, but did not specify what those would be, and that she would be absent more than four times each month. Id.

 **A.** **The ALJ's Decision**

The ALJ decided this case adverse to Plaintiff at Step 4 and, alternatively, at Step 5. At Step 2, the ALJ found that Plaintiff's degenerative disc disease was a "severe" impairment as defined in

20 C.F.R. § 416.920(c). (Tr. 24). However, at Step 3, the ALJ did not find that Plaintiff's impairments, either singly or in combination, met or medically equaled any of the Listings. Id. As to RFC, the ALJ determined that Plaintiff could perform a limited range of light work. (Tr. 25). Based on this RFC and the expert opinion of the VE, the ALJ concluded at Step 4 that Plaintiff was not disabled because she was capable of performing her past relevant work. (Tr. 28). Alternatively, at Step 5, the ALJ concluded that Plaintiff was not disabled because she was capable of performing other unskilled light and secondary jobs available in the economy. (Tr. 28-29).

### B. Plaintiff Has Shown No Error in the ALJ's Findings

Plaintiff has not, either in her Complaint or Motion, identified any specific error in the ALJ's decision and summarily requests remand. Out of deference to Plaintiff's pro se status, the Court has independently reviewed the ALJ's decision and the portions of the record he relies upon as support for his findings; and finds no apparent legal or factual error in the ALJ's decision that might warrant a reversal and remand. In addition, the Court has reviewed Defendant's Memorandum in support of affirmance and finds that it has offered good and supported reasons to affirm the ALJ's denial of benefits.

The ALJ's findings all have adequate evidentiary support in the record and must be affirmed. With respect to the Step 2 finding that degenerative disc disease was Plaintiff's only severe impairment, as the ALJ accurately explained (Tr. 24), Plaintiff testified that she had not been treated for her previous Achilles tendon injury since her alleged onset date, (Tr. 59-60) and, although Plaintiff had complained of neck pain beginning in June 2012, Dr. Doherty had noted that her cervical spine MRI did not show significant deterioration or stenosis (Tr. 24; see Tr. 425), and there is no further medical evidence in the record of any neck impairment. Furthermore, the record,

including Plaintiff's own testimony (Tr. 62-63), supports the ALJ's finding that Plaintiff did not have a severe mental impairment, as she has not sought any medical health treatment or taken any mental health medications since well before she applied for disability benefits. (Tr. 24). Thus, the record fully supports the ALJ's Step 2 finding that degenerative disc disease was Plaintiff's only severe impairment.

The ALJ's Step 3 finding that Plaintiff did not meet Listing 1.04 is also adequately supported by the medical opinions of both Dr. Bennett and Dr. Bernstein who reviewed the relevant medical records and expressly found that Plaintiff's impairments did not meet Listing 1.04 for disorders of the spine. (Tr. 115, 125). These medical opinions constitute substantial evidence to support the ALJ's Step 3 finding. The opinions of Dr. Bennett and Dr. Bernstein also constitute substantial evidence to support the ALJ's RFC assessment, as they both opined that Plaintiff was able to perform light work with postural limitations as found by the ALJ. (Tr. 116-117, 126-127). The ALJ explained that these opinions were consistent with the evidence as a whole, including treatment notes, clinical findings and Plaintiff's reported activities of daily living, and Plaintiff has not identified any error in that reasoning. (Tr. 27-28). The ALJ also properly gave some weight to Dr. Doherty's note in August 2011 that Plaintiff could return to work in November 2011, as that note was also consistent with the record. (Tr. 26). Additionally, after Plaintiff's August 2011 surgery, the record reflects that Dr. Doherty and Mr. Welch reported that she was doing "remarkably well" and demonstrated relatively normal examination findings. (Tr. 364, 419, 423, 447-448). Plaintiff's physical therapist also similarly noted that Plaintiff was independently able to perform various activities of daily living without pain or limitation as early as September 2011. (Tr. 385, 387 and

389). Finally, in her second function report in December 2011, Plaintiff reported that she was able to run errands, attend to her personal care, sweep, do laundry, dust, cook and drive. (Tr. 245-249).

The ALJ's decision to give little weight to Dr. Doherty's September 2012 opinion that Plaintiff could not perform even sedentary work is also adequately supported by the record. The ALJ accurately noted that the record did not support Dr. Doherty's opinion and was inconsistent with the treatment notes, objective findings, minimal treatment after surgery and Plaintiff's reported activities. (Tr. 27).

Because the record as a whole supports the ALJ's decision to give significant weight to Dr. Bennett's and Dr. Bernstein's opinions and to give little weight to Dr. Doherty's September 2012 opinion, substantial evidence supports the ALJ's RFC assessment and his findings at Steps 4 and 5. Accordingly, substantial evidence supports the ALJ's finding that Plaintiff was not disabled from the date she applied for disability benefits through the date of the decision. Plaintiff has failed to identify any specific claimed error in the ALJ's findings, and this Court's independent review has not revealed any apparent factual or legal errors warranting reversal and remand.

**VI.     CONCLUSION**

For the reasons discussed herein, I recommend that the Commissioner's Motion for Order Affirming the Decision of the Commissioner (Document No. 14) be GRANTED and that Plaintiff's Motion to Remand (Document No. 13) be DENIED. Further, I recommend that Final Judgment enter in favor of Defendant.

Any objection to this Report and Recommendation must be specific and must be filed with the Clerk of the Court within fourteen (14) days of its receipt. See Fed. R. Civ. P. 72(b); LR Cv 72. Failure to file specific objections in a timely manner constitutes waiver of the right to review by the

District Court and the right to appeal the District Court's decision. See <u>United States v. Valencia-Copete</u>, 792 F.2d 4, 6 (1st Cir. 1986); <u>Park Motor Mart, Inc. v. Ford Motor Co.</u>, 616 F.2d 603, 605 (1st Cir. 1980).

  /s/ Lincoln D. Almond
LINCOLN D. ALMOND
United States Magistrate Judge
January 7, 2015